LIBORIO II, L.P. a Delaware limited partnership, and Lenape Development, Inc., a Delaware corporation, and Liborio III, L.P., a limited partnership, Plaintiffs,

v.

ARTESIAN WATER COMPANY, INC., a corporation of the State of Delaware, Defendant.

Civ. A. No. 91A–10–13.

Superior Court of Delaware, New Castle County.

Submitted: March 5, 1992.
Decided: July 9, 1992.

---

L. Vincent Ramunno, of Ramunno & Ramunno, P.A., for plaintiffs.

Richard J. Abrams, of Richards, Layton and Finger, for defendant.

## OPINION

HERLIHY, Judge.

Appellee Artesian Water Company, Inc. [Artesian] has moved to dismiss this appeal for failure of Liborio II, L.P., Lenape Development, Inc. and Liborio III, L.P. [appellants] to join a necessary party.

Appellants have appealed a decision of the Public Service Commission [PSC]. Artesian argues that Superior Court Civil Rule 19(a) requires appellants to have added the PSC as a party and its failure to do so mandates dismissal of this appeal. Therefore, the issue is whether the PSC is a *necessary* party.

## BACKGROUND

Appellants originally sued Artesian for damages in this Court. This Court determined that portions of appellants' claims lay exclusively within the jurisdiction of the PSC and directed appellants to seek relief of those portions of their complaint over which the PSC had jurisdiction. The balance of their complaint was stayed. *Liborio II v. Artesian Water Co.*, Del.Super., 593 A.2d 571 (1990). That decision contains more of the factual background regarding this current matter.

Pursuant to *Liborio*, appellants petitioned the PSC for relief. In sum, appellants, who are home developers, had entered into water service construction contracts with Artesian for some new developments. Appellants were required to pay advances to Artesian for the construction cost. Appellants did not contest that cost or requirement.

In their initial complaint and before the PSC on remand, appellants objected to a "gross-up" charge on the advance. Because of changes in the Internal Revenue Code, utilities were required to treat such advances as income. As is noted in *Liborio*, the PSC determined in a general rate-making ruling that developers should pay the income tax potentially due on such advances. Further, because of various tax rules, the advance of the taxes due is also treated as income so there is a tax on that tax advance. The basic tax is 40%, however, with the tax on the tax, a total of 66% tax liability is imposed. The PSC had previously allowed Artesian and other utilities to charge developers that 66% "gross-up".

In their initial damages action, appellants argued such a payment requirement was unreasonable and arbitrary. They also claimed Artesian was unjustly enriched by these advances. That latter claim was stayed while appellants instituted a complaint against Artesian before the PSC challenging the alleged unreasonableness and arbitrariness of the "gross-up".

Appellants filed their complaint with the PSC. At this stage, it is only necessary to note that the PSC rejected appellants' basic complaint that the "gross-up" was unrea-

sonable and arbitrary. However, the PSC also rejected appellants' claim on three other grounds. They are appellants' failure to (1) allege any procedural irregularity in adopting the generic rate allowing "gross-up", (2) participate in the original process leading up to the generic rule's adoption and (3) seek relief from the PSC before signing their contracts with Artesian.

In the process of considering appellants' complaint, an issue arose over how, when and how much developers can seek refunds of tax advances paid. This is important because utilities such as Artesian may and apparently do pay less in taxes than the 66% advance. The PSC initiated a limited review of its earlier generic rule and other procedures on the refund issue and retained jurisdiction for that issue's reconsideration.

In the PSC's Findings, Decision and Order No. 3332 relating to appellants' complaint, the PSC states at various points:

18. A review of [appellants'] complaint reveals that the fundamental unfairness of which it complains is Artesian's application of the gross-up charges in accordance with the [PSC]–approved rules and regulations governing treatment of Advances and CIAC. Under such circumstances, there is no basis for concluding that the gross-up charges imposed upon [appellants] are unauthorized or otherwise unlawful.

19. It also is clear from the contentions raised in the [appellants'] complaint that [appellants'] allegations amount to an attack upon the concept of tax normalization. . . .

20. . . . [The PSC] has adopted the policy of normalization. . . .

21. [Appellants'] contention that the advance should consist of the cost of the construction of the extension [of utilities] *plus* the *effective tax rate actually paid* by the utility is inconsistent with Rule 3.8.3. . . .

### DISCUSSION

■ Rate fixing by the PSC is a legislative function and any appeal of such action makes the PSC a litigant. *Application of*

*Wilmington Suburban Water Corp.*, Del. Supr., 211 A.2d 602, 605 (1965). The record now and as discussed in *Liborio* makes it clear that there was an initial "generic" rate ruling by the PSC. That ruling—regulation—enabled regulated utilities to charge advances and gross-ups.

■ The record in the current appeal shows that the PSC revisited the basis behind its initial rate ruling. That revisitation occurred by virtue of appellants' attack on the PSC's allowance of gross-ups as arbitrary and unreasonable. The language cited above demonstrates that and the PSC's reaffirmation of the original ruling. The PSC also addressed the specifics of appellants' complaint, such as their nonparticipation in the initial rule-making process. Is the PSC a necessary party to this appeal? Delaware cases to date have not addressed that question. Their focus has been whether the administrative agency *can* be a party.

In *Cebrick v. Peake*, Del.Supr., 426 A.2d 319 (1981), the court confronted the question whether the Alcoholic Beverage Control Commission [ABC] could appeal to that court a ruling adverse to its initial ruling. The court held the ABC could file such an appeal based on several grounds, namely, historical precedent involving the ABC, the Administrative Procedures Act (29 *Del.C.* § 10101, *et seq.* does not bar such action), the implication from 29 *Del.C.* § 10145 (§ 6445 in the opinion) about service of a notice of appeal on the agency without requiring notice be served on parties and other factors. *Cebrick*, 426 A.2d at 320–21.

The *Cebrick* court also noted that the ABC existed not only to resolve disputes between private litigants but is charged with regulating the alcohol industry in Delaware. Further, the court said the ABC acts as a public advocate. *Cebrick*, 426 A.2d at 320.

Much of the above reasoning applies here. The PSC, probably more than the ABC, has significant utility regulatory authority. *Liborio*, 593 A.2d at 575. It acts,

too, as a public advocate. 26 *Del.C.* § 115(a) and § 201.

Another factor upon which the Supreme Court relied is that the statutory duty of the ABC to regulate the sale of alcoholic liquors "should not be fashioned by objectors or protestants, or the absence thereof, to a specific licensing proceeding." *Cebrick* 426 A.2d at 320. Here, too, the presence or absence of protestants should not fashion the PSC's regulation of utility rates.

There is a clear difference between *Cebrick* and this appeal. In *Cebrick* there was no entity other than the ABC to represent that agency's view in Court. Here, Artesian is capable of such representation.

However, there are two facets to the current dispute. One is the appellants' private contract action against Artesian which was stayed pending any action before the PSC. The other facet is appellants' attack on the reasonableness of the rule allowing gross-ups. In appellants' action before the PSC, as noted, the basis for allowing gross-ups was revisited. Finally, the PSC retained limited jurisdiction over appellants' complaint and reopened the rule it previously adopted to reconsider all utilities refunds to developers, not just any refund due from Artesian to appellants.

Admittedly, Delaware case law is unclear or confusing[1] on the PSC's status-to-be in the current proceeding. In *Nepi v. Lammot*, Del.Super., 156 A.2d 413 (1959), the court held that it was proper to make the Wilmington Board of Adjustment a party on an appeal of a denial of a variance. However, there were numerous objectors. Obviously, the court was concerned with the practicality of making such objectors the appellees. Unstated is that the City and the enforcement of its zoning code were the real interests involved. Accord *Zoning Bd. of Adjustment v. Dragon Run Terrace, Inc.*, Del.Supr., 216 A.2d 146 (1965).

In comparison can be found *Lindsay v. Beaver Brook Section One, Inc.*, Del. Supr., 322 A.2d 13 (1974). In that case,

where the appellant to the Superior Court was a property owner whom the Human Relations Commission [Commission] found to have discriminated in an apartment rental, the Court noted that that Commission was not a party to the Superior Court proceeding as it was a quasi-judicial agency. The court stated the Attorney General, as the Commission's lawyer, was not compelled to file an appeal.

The original complainant was represented by a Deputy Attorney General in the *de novo* appeal in Superior Court. That fact, plus the presence of two litigants, would imply that under such circumstances the regulatory agency is not a necessary party. However, in *Simpson v. Kennedy*, Del.Super., 327 A.2d 763 (1974), this Court held that the Commission was a party to an appeal of one if its findings of housing discrimination. Beside carrying out the intent of the legislation creating the Commission, the court was concerned that often complainants are indigent. In such cases, unless the Commission is a party, the Court noted, appeals would be meaningless.

The concern of unrepresented or indigent litigants does not apply to this case. Artesian is a large regulated utility and has been represented throughout the proceedings in this Court by competent counsel from one of the State's largest law firms. Appellants are represented by experienced, competent counsel who also is really one of the partners in the various partnerships composing the appellants.

The case law to date does not appear to offer any kind of bright line between those cases where the administrative agency whose decision is being appealed must be a party or need not be a party. Compare *Dragon Run*, 216 A.2d at 147 to *Simpson*, 327 A.2d at 764 n. 1.

In this appeal (regrettably for members of the Bar) it is not necessary to decipher, divine or fashion such a bright line. The cases of *Wilmington Suburban Water* and *Cebrick* explicitly and/or implicitly stand for the proposition that in Delaware an appeal from an administrative agency that is significantly involved in regulating an

---

1. See Delaware Appellate Handbook, Vol. 1    § 20.13.

industry, such as alcoholic beverages or utilities, is a necessary party to an appeal from one of its decisions. This case is made stronger because of the PSC's revisitation and ruling in the fundamental reasons behind the generic rate ruling really at issue, the right to charge gross-ups.

### CONCLUSION

Accordingly, the motion of Artesian Water Company, Inc. to dismiss the appeal is **GRANTED.** However, appellants Liborio II, L.P., Lenape Development, Inc. and Liborio III, L.P. shall have thirty days from the date of this decision to add the Public Service Commission as a party defendant according to all applicable rules and statutes.