# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) C.A. No. N18C-12-260 FWW ) ) | |
| DELAWARE PUBLIC SERVICE COMISSION, | ) ) ) | |
| Defendant. | ) ) | |

Submitted: November 12, 2019
Decided: February 24, 2020

*Upon Defendant the Delaware Public Service Commission's Motion to Dismiss*
**GRANTED.**

*Upon Intervenor the Delaware Division of the Public Advocate's Motion to Dismiss*
**GRANTED.**

*Upon Plaintiff the State of Delaware Department of Natural Resources and Environmental Control's Motion for Stay of Enforcement*
**MOOT.**

## <u>MEMORANDUM OPINION</u>

Devera B. Scott, Esquire, Jameson A.L. Tweedie, Esquire, Deputy Attorneys General, 102 West Water Street, Dover, DE 19904, Attorneys for Plaintiff.

Regina A. Iorii, Esquire, Deputy Attorney General, 820 N. French Street, 4th Floor, Wilmington, DE 19801, Attorney for Intervenor.

Thomas D. Walsh, Esquire, Deputy Attorney General, 820 N. French Street, 6th Floor, Wilmington, DE 19801, Attorney for Defendant.

**WHARTON, J.**

Before the Court is a declaratory judgment action brought by one state agency, the Delaware Department of Natural Resources and Environmental Control ("DNREC"), against another state agency, the Delaware Public Service Commission ("PSC"). Yet a third state agency, the Delaware Division of the Public Advocate ("DPA"), sought and received permission to intervene. In this action, DNREC challenges the lawfulness of certain regulations issued by PSC and seeks declaratory relief.[1] Those regulations relate to public utilities, including Delmarva Power & Light ("Delmarva"), subject to the Renewable Energy Portfolio Standards Act ("RESPA").[2] DNREC claims that the regulations and their effects improperly encroach upon the DNREC Secretary's authority. DPA sides with PSC. It may be fair to ask why the Judicial Branch is asked resolve this inter-agency turf dispute, rather than the Executive or Legislative Branches, but it appears that neither party is asking that question.[3] So, the Court address the three motions before it.

Upon carefully considering those three motions: Defendant PSC's Motion to Dismiss on standing grounds; Intervener DPA's Motion to Dismiss on standing grounds; and Plaintiff DNREC's Motion to Stay enforcement of PSC's regulations,

---

[1] Compl., D.I. 1.
[2] *Id.*
[3] In fairness, DNREC did seek a stay in order to pursue a legislative fix, but PSC opposed that effort.

both PSC's and DPA's Motions to Dismiss are **GRANTED.** Consequently, DNREC's Motion for Stay is **MOOT.**

## I. Facts and Procedural History

In 2005, the General Assembly enacted REPSA, requiring all Delaware regulated utilities to purchase a percentage of their electric supply from renewable and solar energy sources.[4] In 2010, the General Assembly amended REPSA[5] permitting DNREC and PSC "in consultation with each other" to "freeze" the minimum percentage requirement when the cost of compliance exceeds certain markers.[6] At the same time, the General Assembly added a provision, 26 *Del. C.* § 362(b),[7] authorizing the PSC to specify the procedures for freezing the minimum requirement.[8]

In May 2011, in compliance with the new provision, the PSC promulgated regulations purporting to create procedures for freezing the minimum percentage

---

[4] *The Delaware Div. of the Pub. Advocate v. The Delaware Pub. Serv. Comm'n*, 2016 WL 7494899, at *1 (Del. Super. Ct. Dec. 30, 2016).

[5] 26 *Del. C.* §§ 354(i) and (j).

[6] *The Delaware Div. of the Pub. Advocate v. The Delaware Pub. Serv. Comm'n*, 2016 WL 7494899, at *1

[7] "For regulated utilities, the Commission shall further adopt rules and regulations to specify the procedures for freezing the minimum cumulative solar photovoltaic requirement as authorized under § 354(i) and (j) of this title ...." 26 *Del. C.* § 362(b).

[8] *The Delaware Div. of the Pub. Advocate v. The Delaware Pub. Serv. Comm'n*, 2016 WL 7494899, at *2.

4

requirement.[9] In October 2015, DPA filed a petition to reopen the rulemaking seeking more detail in the regulations.[10] Specifically, DPA sought more detailed regulations setting out how and when costs were to be calculated under sections 354(i) and (j).[11] In November 2015, PSC denied the petition, interpreting sections 354(i) and (j) as granting DNREC the primary responsibility for promulgating regulations determining when a freeze may occur.[12] DPA appealed the order to this Court. This Court ruled that the General Assembly granted PSC, not DNREC, the authority to promulgate regulations regarding freezing and reversed and remanded for proceedings consistent with its order.[13]

In February 2017, PSC reopened the regulation docket for the limited purpose of amending its sections 354 (i) and (j) regulations to comply with this Court's ruling.[14] After receiving comments and conducting extensive hearings, PSC adopted the regulations at issue here.

---

[9] *Id.*

[10] *The Delaware Div. of the Pub. Advocate v. The Delaware Pub. Serv. Comm'n,* 2016 WL 7494899, at *3.

[11] *Id.*

[12] *Id.*

[13] *Id.* at *5.

[14] *In the Matter of the Adoption of Rules & Procedures to Implement the Renewable Energy Portfolio Standards Act, 26 Del. C. §§ 351-363, As Applied to Retail Elec. Suppliers (Opened Aug. 23, 2005); Reopened Sept. 4, 2007; Aug. 5, 2008; Sept. 22, 2009; Aug. 17, 2010; Sept. 6, 2011; Sept. 18, 2012; Feb. 2, 2017),* 2017 WL 10543178, at *3 (Feb. 2, 2017).

5

On December 28, 2018, DNREC initiated this action seeking to invalidate the regulations entirely by asking the Court to declare the PSC regulations unlawful.[15] DNREC also requested a stay of the enforcement of the regulations until the end of the litigation.[16] DNREC claims that PSC promulgated unlawful regulations which effectively: (1) usurp the agency's authority conferred to it by the General Assembly; (2) create a right of judicial review, unsanctioned by the General Assembly, of DNREC's right to freeze renewable portfolio standards; and (3) are inconsistent with the express purpose of REPSA.[17] PSC answered the complaint on March 5, 2019.[18] On July 11th, the Court granted DPA's Motion to Intervene.[19]

On September 6, 2019, the parties submitted three motions: PSC filed a Motion to Dismiss claiming DNREC lacked standing to bring the claim;[20] DNREC filed a Motion to Stay the enforcement of the regulations for the length of the litigation;[21] and DPA also moved to dismiss on standing grounds.[22] On October

---

[15] Compl., D.I. 1.
[16] Compl., D.I. 1.
[17] DNREC's Motion for Stay at ¶¶ 4-6., D.I. 21.
[18] PSC's Ans. to Compl., D.I. 11.
[19] *Delaware Dep't of Nat. Res. & Envtl. Control v. Delaware Pub. Serv. Comm'n.*, Del. Super., C.A. No.: N18C-12-260, Wharton, J. (July 11, 2019) (Letter Op.).
[20] PSC's Mot. to Dismiss, D.I. 20.
[21] DNREC's Motion for Stay, D. I. 21.
[22] DPA's Mot. to Dismiss, D.I. 23.

7th, the Court heard oral arguments addressing the motions. On November 12th, after hearing argument, the Court denied DNREC's request for a limited stay.[23]

## II. The Motions to Dismiss

### A. The Parties' Contentions

PSC argues that DNREC lacks standing to bring this action. Under 29 *Del. C.* § 10141, any "person aggrieved by and claiming the unlawfulness of any regulation" may bring a declaratory relief action in this court. PSC argues that DNREC is neither a "person," nor "aggrieved."[24] It claims support for this position in 29 *Del. C.* § 10102(6), which defines "party" as "[a] person or agency named or admitted in an agency proceeding as a party, or properly seeking and entitled as of right to be admitted as a party to an agency proceeding."[25] PSC asserts that the Administrative Procedures Act ("APA"), by disjunctively listing "person" and "agency," distinguishes between "person" and "agency" in the definition of "party."[26] Since DNREC is an agency, it follows then that it is not a "person." That distinction, PSC contends, is evidence that the General Assembly intentionally excluded administrative agencies from the definition of "person."[27] Further, the

---

[23] D.I. 40.
[24] PSC's Mot. to Dismiss at 2.
[25] 29 *Del. C.* § 10102(6).
[26] *Id.*
[27] *Id.* at 2-3; PSC also asserts that the Court should consider *Dir., Office of Workers' Comp. Programs v. Newport News* where the United States Supreme Court held that

7

definition of "person" found in 1 *Del. C.* § 302(15) does not include state agencies. Moreover, PSC argues that DNREC is not "aggrieved" because the common definition of "aggrieved" is to be "deprived of legal rights or claims" and DNREC has not been deprived of any legal rights or claims.[28] For its part, DPA agrees with PSC that DNREC lacks standing, since DNREC is neither a "person," nor "aggrieved."[29]

In response, DNREC argues that the proper meaning of "aggrieved" is not found in the dictionary, but rather in relevant Delaware case law.[30] According to DNREC to be "aggrieved" for purposes of contesting regulations, a person or entity must be subject to the regulations.[31] Further, suffering an injury in fact is not precondition for challenging a regulation.[32] DNREC maintains that it is subject to the regulations, and thus, "aggrieved."[33] DNREC also disputes that what it terms the "default definition of 'person' from 1 *Del. C.* § 302(15)" applies to the APA as

---

"when an agency in its governmental capacity is meant to have standing, Congress says so." *Dir., Office of Workers' Comp. Programs v. Newport News*, 514 U.S. 122, 129 (1995).

[28] *Id.*

[29] DPA's Mot. to Dismiss, D.I. 23.

[30] DNREC's Resp. to Mot. to Dismiss at 3.

[31] *Id., citing Baker v. DNREC*, 2015 WL 5971784, at *10 (Del. Super. Oct. 7, 2015), *aff'd* 137 A.3d 122 (Del. 2016); *Del. State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1263 (Del. Super. 2018)

[32] *Id.*

[33] *Id.*

8

PSC argues.[34] Instead, DNREC contends that the "default" definition does not apply where it is inconsistent with the intent of the Legislature, statutory context, or the Code as a whole.[35] In DNREC's view, both RESPA and statutes detailing DNREC's authority make it clear that the "default" definition would be inconsistent with both the intent of the Legislature and the context of the Code. Additionally, since DNREC is seeking declaratory judgment, it relies on the separate definition of "person" found in the statute authorizing declaratory judgment actions – 10 *Del. C.* § 6513.[36] Alternatively, DNREC requests leave to amend the Complaint to add the Secretary, who obviously is a "person" to the complaint individually.

## B. Standard and Scope of Review

Standing—in its procedural sense—refers to the right of a party to invoke the jurisdiction of the Court to enforce a claim or redress a grievance.[37] The party invoking jurisdiction bears the burden of establishing standing grounds.[38] The question of standing is concerned only with *who* is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy.[39] In order

---

[34] *Id.*
[35] *Id., citing* 1 *Del. C.* §§ 301, 302.
[36] *Id.* at 4.
[37] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del.1991) (citations omitted).
[38] *Dover Historical Soc. v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1109 (Del. 2003).
[39] *Id.*

to establish standing, a plaintiff must have an interest distinguishable from the greater public.[40]

In *Gannett Co., Inc. v. State*, the Delaware Supreme Court articulated the general test for standing as whether: (1) there is a claim of injury-in-fact; and (2) the interest sought to be protected is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question.[41] Thus, the test for standing applies to both statutory and constitutional inquiries.[42]

While the general principals of standing serve to guide this Court, the determinant here is the statutory language itself, because "no party has a right to [commence an action] unless the statute governing the matter has conferred a right to do so."[43] This limitation is particularly pertinent where the party instituting the action is an administrative agency, since agency authority is exclusively statutory.[44] Thus, DNREC lacks authority to initiate this action for declaratory relief unless

---

[40] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994).
[41] *Gannett Co., Inc. v. State*, 565 A.2d 895, 897 (Del. 1989) (citing *Association of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153-54 (1970)).
[42] *Oceanport Indus., Inc.*, 636 A.2d at 900.
[43] *Id.*
[44] *Office of the Comm'r, Delaware Alcoholic Beverage Control v. Appeals Comm'n, Delaware Alcoholic Beverage Control*, 116 A.3d 1221, 1226 (Del. 2015) ("it is well established that administrative agencies . . . derive their powers and authority *solely* from the statute creating such agencies and which define their powers and authority.") (citation omitted).

10

either the APA,[45] which governs judicial review of regulations promulgated by administrative agencies, or DNREC's enabling statutes in Titles 7 and 29[46] grant it the right to do so.

## C. Discussion

The optics of this case are not attractive. The case was brought by DNREC. DNREC is an agency of the State of Delaware. The General Assembly created it. The Governor appoints its Secretary. The Senate confirms the Secretary. The Department of Justice represents DNREC. Defendant PSC is an agency of the State of Delaware. The General Assembly created it. The Governor appoints its Commissioners. The Senate confirms the Commissioners. The Department of Justice represents the PSC. Intervenor DPA is an agency of the State of Delaware. The General Assembly created it. The Governor appoints the Public Advocate. The Senate confirms the Public Advocate. The Department of Justice represents the DPA. The taxpaying citizens of the State might fairly ask, "What is going on here? Is the State suing itself? Is this how our government is supposed to work? Did the General Assembly really intend this?" Needless to say, these questions have crossed the Court's mind as well.

---

[45] 29 *Del. C.* § 10141.
[46] 29 *Del. C.* §§ 8001-8031 *et seq.*

11

Turning to the APA, 29 *Del. C.* § 10141(a) provides that "[a]ny person aggrieved by and claiming the unlawfulness of any regulation may bring an action in the Court for declaratory relief."[47] The question is whether DNREC, as an administrative agency, is both (1) a "person" and (2) "aggrieved." The APA does not define "person," but the General Provisions of the Delaware Code, in Chapter 3, Interpretation of Statutes, do. The definitions in that chapter "shall be observed in the construction of this Code and all other statutes, unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the Code or to the context of the same statute."[48] Similarly, unless the context requires a different meaning, "person" "include[s] corporations, companies, associations, firms, partnerships, societies and joint stock companies, as well as individuals."[49] Notably, the definition does not include agencies of the state.

The Court agrees with PSC and DPA that DNREC is not a "person" permitted by the APA to bring this action. It is clear by § 10102's definition of "party" that the General Assembly intended to distinguish a "person" and an "agency". Further, the Court finds no statute under Title 7 or chapter 80 of Title 29, DNREC's enabling statutes, permitting it to bring this action either. The Court rejects DNREC's contention that context dictates a need to define "person" to include an agency. The

---

[47] 29 *Del. C.* § 10141(a).
[48] 1 *Del. C.* § 301.
[49] 1 *Del. C.* § 302(15).

12

General Provisions defined by section 302 extend across the breath of the Code. Perhaps, the context would dictate a need to require an agency to be considered a "person" if the agency's enabling statute authorized the action explicitly and thus conflicted with the APA. However, no such context exists here. Finally, the Court finds no evidence that the General assembly intended DNREC to sue PSC in this context. Rather, the General Assembly directed the two agencies to act "in consultation" with each other.[50] In the Court's view, the General Assembly contemplated cooperation between the two agencies, not contentious litigation. Thus, the Court concludes DNREC lacks standing because it is not a "person."

Even if DNREC were a person, the Court finds that DNREC is not "aggrieved" as is required under the APA. While the Court agrees that *Baker v. DNREC's*[51] definition of "aggrieved" is more applicable than the Webster definition cited by PSC, *Baker* stands for the proposition that "a person or entity subject to the regulations" is aggrieved.[52] DNREC alleges frustration of its agency purpose to support why it believes it is aggrieved, but that claimed frustration of purpose does not make DNREC subject the regulations. It simply makes it not the regulator. The regulated utilities are the entities subject to the regulations. Without more, the Court

---

[50] 26 *Del. C.* §§ 354(i) and (j).
[51] 2015 WL5971784, at *10 (Del. Super. Ct. Oct. 7, 20150, *aff'd* 137 A.3d 122 (Del. 2016).
[52] *Id.*

13

finds this is not enough to be "aggrieved" for the purposes of the APA. Thus, DNREC is neither a "person" nor "aggrieved."

The Court now turns to DNREC's request for leave to amend the complaint and add its Secretary, Shawn Garvin, as plaintiff. Neither in its brief nor at oral argument does DNREC claim that the Secretary is "aggrieved" in any capacity other than in his administrative capacity.[53] In fact, in its brief, DNREC argues that both the Secretary and the Director of the agency are "aggrieved" because the PSC regulations require them to act.[54] The Court disagrees and finds that an administrative officer is not a party for the purposes of seeking a review in this context.[55] Apart from their status with DNREC, they are no different from members of the general public. Therefore, the Court hereby denies the request.

### III. Delaware Department of Natural Resources and Environmental Control's Motion for Stay of Enforcement of Regulations

---

[53] DNREC also asserts that Director Dayna Cobb would have standing to pursue this action. Resp. to Motion to Dismiss at ¶ 8.

[54] *Id.*

[55] *See Office of the Comm'r, Delaware Alcoholic Beverage Control v. Appeals Comm'n, Delaware Alcoholic Beverage Control*, 116 A.3d 1221, 1228 (Del. 2015) (citing *Mortensen v. Pyramid Sav. & Loan Ass'n of Milwaukee*, 53 Wis.2d 81, 191 N.W.2d 730, 731 (1971) ("An administrative officer is not a party for the purposes of seeking a review of a reversal of his determination by a board of appeals.")); *Ropp v. King*, 2007 WL 2198771, at *5 (Del. Ch. July 25, 2007) (holding that Ropp, the Securities Commissioner of the State of Delaware, could not be "aggrieved" by his own order and thus lacked standing to appeal the order.).

14

Because the Court concludes that DNREC lacks standing, it is unnecessary to decide DNREC's motion for stay. Under the mootness doctrine, Delaware courts will decline to decide moot issues.[56] That is, although there may have been a justiciable controversy when the litigation was commenced, a proceeding may become moot if the legal issue in dispute is no longer amenable to judicial resolution.[57] Since the Court has determined that DNREC lacks standing to bring this action, DNREC's motion for stay is **MOOT**.

## IV. Conclusion

For the foregoing reasons, the Motions to Dismiss of the Delaware Public Service Commission and the Delaware Division of the Public Advocate are **GRANTED,** and the Delaware Department of Natural Resources and Environmental Control's request for leave to amend is **DENIED**. The Delaware Department of Natural Resources and Environmental Control's Motion to Stay Enforcement is **MOOT**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

[56] *Am. Littoral Soc., Inc. v. Bernie's Conchs, LLC*, 954 A.2d 909, 909 (Del. 2008).
[57] *Id.*

15